UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LITINETSKY,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OC3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC3; THE BANK OF NEW YORK MELLON; PEAK FORECLOSURE SERVICES, INC.; NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>Defendants. | No. 2:18-cv-02125-TLN-AC<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |

This matter is before the Court on Plaintiff Maria Litinetsky's ("Plaintiff") *Ex Parte* Application for a Temporary Restraining Order. (ECF No. 8.) Plaintiff seeks to enjoin the defendants from foreclosing on real property. Defendants The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2006-OC3, Mortgage Pass-Through Certificates, Series 2006-OC3; The Bank of New York

Mellon; Peak Foreclosure Services, Inc.; New Penn Financial, LLC dba Shellpoint Mortgage Servicing, (collectively, "Defendants"), oppose Plaintiff's application. (ECF No. 10.) For the reasons discussed below, the Court hereby GRANTS Plaintiff's application for a temporary restraining order, (ECF No. 8).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges she received a $1,000,000 mortgage in 2006 secured by real property, located at 400 Squaw Creek Road, Units 834 and 836, Olympic, California 96146 ("Property"). (ECF No. 1-1 ¶ 12.) Plaintiff alleges the Property is her residence. (ECF No. 1-1 ¶ 1.) Plaintiff alleges ownership of the mortgage changed multiple times, and Defendants are entities that either owned or serviced the mortgage at some point since 2006. (ECF No. 1-1 ¶¶ 11–20.)

Plaintiff alleges she had difficulty making payments and by November 2011 was in default. (ECF No. 1-1 ¶¶ 14–15.) Plaintiff alleges a final Notice of Default was recorded against the Property on December 14, 2017. (ECF No. 1-1 ¶¶ 14–20.) Plaintiff alleges she "applied for and completed a complete loan modification" on May 28, 2018, based on changed financial circumstances since her previous modification application. (ECF No. 1-1 ¶ 21.) Plaintiff states a Notice of Trustee's Sale of the Property was recorded on June 5, 2018. (ECF No. 1-1 ¶ 22.)

Plaintiff sued Defendants in the Superior Court of California, Placer County, alleging several violations of California Civil Code § 2923 *et seq*., as well as common law claims. (ECF No. 1-1 at 3–4.) Defendants removed to federal court based on diversity. (ECF No. 1 at 1.) Defendants then moved to dismiss for failure to state a claim. (ECF No. 5-1 at 9.) Defendants argue Plaintiff's previous modification application was reviewed and denied and she is not entitled to any further review, and the Property was not Plaintiff's primary residence so she is not entitled to the protections under § 2923, and so all her claims therefore fail. (ECF No. 5-1 at 9.)

Plaintiff now applies for a temporary restraining order to stop the foreclosure. (ECF No. 8.) Plaintiff states a foreclosure sale for the Property is scheduled for August 28, 2018. (ECF No. 8 at 2.) Plaintiff also states the parties have agreed to stipulate to remand this case back to state court, but have not filed the stipulation so that this application can be heard before the scheduled foreclosure. (ECF No. 8-2 ¶ 19.) Plaintiff attaches a draft of the stipulation signed by Plaintiff's

counsel but not Defendants' counsel.  (ECF No. 8-6 at 1–14.)

## II. STANDARD OF LAW

A temporary restraining order ("TRO") is an extraordinary and temporary "fix" that a court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See Fed. R. Civ. P. 65. It is the practice of this Court to apply the same standard to motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.") (internal quotation and citations omitted).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III. ANALYSIS

Plaintiff seeks a TRO under the serious questions variation of the *Winter* test. "Under the 'serious questions' variation of the test, a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of plaintiff; and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011)). If serious questions going to the merits exist, the balance of hardships tips sharply in favor of plaintiff, and plaintiff makes a showing on the other two prongs of the *Winter* test, an injunction may issue. *Id.*

A. <u>Serious Questions Going to the Merits</u>

Plaintiff argues she has at least raised serious questions on the merits of her claims. (ECF No. 8 at 6.) Plaintiff argues, among other claims, that she is entitled to protection under California Civil Code § 2924.11, which prohibits conducting a trustee's sale while a complete foreclosure alternative application is pending until the borrower receives a written determination.

4

(ECF No. 8 at 7.) Plaintiff argues she submitted a complete application on May 28, 2018, based on changed financial circumstances, but Defendants pursued foreclosure while reviewing her modification application and before she received a written determination. (ECF No. 8 at 7.)

Defendants argue Plaintiff's claim under § 2924.11 fails for two reasons. (ECF No. 10 at 11–12.) First, Defendants argue, the code sections on which Plaintiff basis her claims, including § 2924.11, only apply to a homeowner who resides in the property as a principle residence under California Civil Code § 2924.15(a). (ECF No. 10 at 11.) Defendants argue Plaintiff does not occupy the Property as her primary residence, and so the code sections on which she bases her claims do not apply to Plaintiff or the Property's mortgage. (ECF No. 10 at 11–12.) Further, Defendants argue, Plaintiff's had previously been denied a modification, and "[o]bviously if Defendants have already reviewed and denied Plaintiff's loan modification application, there can be no 'dual tracking' because there is no longer a complete application pending." (ECF No. 10 at 12.) Finally, Defendants argue there is "no evidence" the servicer, Shellpoint, is currently in possession of a complete loan modification application. (ECF No. 10 at 13.)

California Civil Code § 2924.11(a) prohibits a lender or servicer from recoding a notice of default or conducting a trustee's sale "[i]f a borrower submits a complete application for a foreclosure prevention alternative," while the application is pending, "until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative." An application is "complete" when the borrower has supplied all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2924.11(g).

First, Plaintiff states the "Property is, and was at all times relevant herein, Plaintiffs principal residence." (ECF No. 8 at 4). Defendants ask the Court to take judicial notice of documents Defendants assert show the Property was not Plaintiff's primary residence at various points. (ECF No. 10 at 11–12.) The Court may take judicial notice of "matters of public record," Federal Rule of Evidence 201, but not of facts that are "subject to reasonable dispute." *Lee v. City of Los Angeles,* 250 F.3D 668, 689 (9th Cir. 2001).[1] Even if the documents show that

---

[1] Defendants request the Court take judicial notice of Deed of Trust No. 2006-0016003, Notice of Default No.

1 | Plaintiff did not occupy the Property as her primary residence at all times, Plaintiff does not
2 | allege the Property was her primary residence at all times, just at all *relevant* times.

Second, Plaintiff states she submitted a complete modification application and the application was still pending when Defendants pursued foreclosure during review. (ECF No. 8 at 7.) While Defendants argue Plaintiff cannot have an application currently pending because she admits Defendants denied her application, Plaintiff's argument is not that her application is pending at this moment, but rather that Defendant recorded the Notice of Default on June 5, 2018, while her May 28, 2018, application was still under review. (ECF No 8 at 7.) Plaintiff further points to a follow up letter Shellpoint sent Plaintiff on July 24, 2018, assigning a representative to evaluate Plaintiff's "financial condition" and determine her "eligibility for all alternatives," further indicating her application was still under review several weeks after Defendants recorded the Notice of Default. (ECF No. 8-4 at 1.)

Plaintiff, in her complaint, sets out sufficient facts, which the Court need not accept as true but is persuaded by the affidavits and briefs that serious questions exist, as to whether Plaintiff's complete modification application was in review while Defendants pursued foreclosure alternatives on a "dual track."

On the briefing available to the Court, and Plaintiff's allegations made under penalty of perjury, Plaintiff has raised serious questions that she resided in the Property at all relevant times, is entitled to protections of § 2924.11, submitted a complete modification application based on changed financial circumstances, but Defendants pursued foreclosure prior to completing review of her application. On this claim at least, Plaintiff has raised a serious question going to the merits. Thus, this element favors Plaintiff.

B. Irreparable Harm

Plaintiff states she will lose her residence if the foreclosure is permitted at this time, and

---

2010-0057756-00, Notice of Trustee's Sale No. 2010-0092419-00, Notice of Trustee's Sale 2012-0017778-00, Rescission of Notice of Default No. 2015-0009912-00, Notice of Default No. 2017-0099050-00, Notice of Trustee's Sale No. 2018-0039765-00, and Placer County 2018-2019 Property Tax Bill. (ECF No. 10 at 30.) Under Federal Rule of Evidence 201 a court can take judicial notice of a document when subject "can be accurately and readily determined form the sources whose accuracy cannot reasonable be questioned." For the reasons stated in Defendants' request and noting no opposition by Plaintiffs to the request, the Court GRANTS Defendants' request, and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201 (ECF No. 10 at 30–81).

argues losing a home is an irreparable injury.  (ECF No. 8 at 10.)  Defendants state that if the Court temporarily enjoins foreclosure of the Property, "Defendants would then be left without any available remedy to enforce the Deed of Trust." (ECF No. 10 at 26.)

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22).  Other courts agree real property is unique and "[i]n the case of a wrongful foreclosure and sale, money compensation would not provide an adequate remedy to plaintiff." *Friedman v. Wells Fargo Bank N.A.*, CV 14-00123 BRO (PLAx), 2014 WL 12572928, at *2 (C.D. Cal. Jan. 23, 2014).  Defendants merely state they would be "left without any available remedy," but do not develop that argument or explain how a modest delay would leave them without remedy.

Because real property is unique, the Court finds Plaintiff would be irreparably harmed without a TRO.  Thus, this factor weighs in Plaintiff's favor.

### C. Balance of Harms

Plaintiff argues she would suffer a permanent deprivation of her home if Defendants are permitted to foreclose.  (ECF No. 8 at 10–11.)  Defendants argue this is not Plaintiff's primary residence so she will not suffer harm "to the same degree that a borrower who only owns one home would."  (ECF No. 10 at 26.)  Defendants identify their harm as further default as Plaintiff continues "to remain in the Property without making loan payments," and that Defendants "would then be left without any available remedy to enforce the Deed of Trust."  (ECF No. 10 at 26.)

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13–1121 LJO MJS, 2013 WL 3864214, at *18 (E.D. Cal. July 23, 2013) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  A court balancing the equities will look to possible harm that could befall either party. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. May 6, 2009) *aff'd*, 348 Fed. Appx. 288 (9th Cir. 2009). Where the court finds serious questions going to the merits, the balance of equities must tip

sharply in favor of Plaintiffs. *Lopez*, 680 F.3d at 1072.

The Court is not persuaded by Defendants' argument that Plaintiff's failure to make loan payments for three years is a sufficient hardship to outweigh the potential loss of a home. The harm to Defendants of a modest delay of the foreclosure of the Property is greatly outweighed by the harm to Plaintiff of the potential loss of her home if the foreclosure is wrongful. Accordingly, this factor weighs in Plaintiff's favor.

### D. Public Interest

Plaintiff asserts the foreclosure crisis lead to problems such as reduced property values and funds for public services, and increased crime "as gangs and drug dealers move into abandoned homes," and foreclosure of the Property "would likely add to these problems." (ECF No. 8 at 11.) Defendants do not address this factor.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks and citations omitted), *vacated and remanded on other grounds*, 565 U.S. 606, 132 S.Ct. 1204 (2012). The public interest prong primarily addresses the impact of an injunction on non-parties. *Bernhardt v. Los Angeles Cnty.*, 339 F. 3d 920, 931–32 (9th Cir. 2003). Other courts have recognized that foreclosures adversely impact households and communities and there is "a strong public interest in preventing unlawful foreclosures." *Sharma v. Povident Funding Assocs., LP*, No. 09-5968 VRW, 2010 WL 143474, at *2 (N.D. Cal. Jan. 8, 2010).

The Court agrees with the other courts that foreclosures adversely impact households and communities. Accordingly, this factor weighs in Plaintiff's favor.

### E. Payment of Bond

The parties disagree about whether Plaintiff can afford to post bond and whether imposition of the bond requirement is appropriate. Plaintiff asks the Court to waive the bond

8

requirement, stating that "to require a bond in any substantial amount is effectively to deny Plaintiff the requested relief." (ECF No. 8 at 12.) Defendants ask the Court to require Plaintiff to post a bond "at least in the amount pf $159,906.54, which was the amount due as of December 12, 2017, as stated in the Notice of Default," and state they "will request a larger amount, including Defendants' anticipated attorneys' fees as security in the event of a preliminary injunction." (ECF No. 10 at 26–27.)

Federal Rule of Civil Procedure 65(c) does require a movant to post a security bond, however, "courts have discretion to excuse the bond requirement." *People of California v. Tahoe Regional Planning Agency*, 766 F. 2d 1319, 1325–26 (9th Cir. 1985); *see Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988).

First, the Court finds Defendants are adequately protected by their security interest in the Property. *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *see also Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success."). Second, the amount requested is substantial and Plaintiff states if ordered to pay the bond she would be precluded from judicial review. *See Mendocino Cnty.*, 684 F. Supp. at 1047 (holding that it is appropriate to waive the bond requirement where "requiring the security would deny access to judicial review.). Finally, "as a result of the parties' ongoing financial relationships, the bond requirement is also properly waived since defendants are capable of recouping any costs or damages resulting from the wrongful issuance of the injunction." *California Hosp. Ass'n v. Max well-Jolly*, 776 F. Supp. 2d 1129 (E.D. Cal. 2011) (citing *United States v. Bedford Assocs.*, 618 F. 2d 904, 916–17 (2nd Cir. 1980)). Accordingly, the Court waives the bond requirement.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby issues a Temporary Restraining Order that prohibits Defendants, and all their agents, from proceeding with a foreclosure of the Property

9

| 1 | located at 400 Squaw Creek Road, Units 834 and 836, Olympic, California 96146.  The |
| --- | --- |
| 2 | Temporary Restraining Order shall remain in place for 45 days from the date of this Order. |
| 3 |     IT IS SO ORDERED. |

Dated: August 27, 2018

Troy L. Nunley  
United States District Judge